UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 18-CR-10205 |
| SHUREN QIN, | ) |
| | ) |
| Defendant. | ) |

## SHUREN QIN'S MOTION FOR PRETRIAL RELEASE ON CONDITIONS

Defendant Shuren Qin respectfully moves the Court to order his pretrial release on certain conditions. As grounds for this motion, Mr. Qin states that given his personal history and characteristics, family and community ties, lack of any prior criminal record, and the nature and circumstances of the offense charged, the government cannot meet its burden of proving that there are no combination of conditions of release that will reasonably assure his appearance for all future court proceedings. 18 U.S.C. § 3142 (b).

The Indictment in this case charged defendant with: Conspiracy to Commit Export Violations in violation of 50 U.S.C. § 1705 (Count 1) and Visa Fraud in violation of 18 U.S.C. § 1546(a) Counts 2 and 3). As argued below, defendant submits that his pretrial release on conditions including a secured bond, surrender of his and his family's passports, and electronic monitoring bracelet is sufficient to ensure his appearance at all court proceedings.

## I.    The Bail Reform Act

Under the Bail Reform Act, a defendant may only be detained pending trial if the government establishes either by clear and convincing evidence that the person poses "a danger to the safety of any other person or the community if released," or by a preponderance of the evidence that the person poses a serious risk of flight. 18 U.S.C. § 3142(f); *United States v.*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 18-CR-10205 |
| SHUREN QIN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## SHUREN QIN'S MOTION FOR PRETRIAL RELEASE ON CONDITIONS

Defendant Shuren Qin respectfully moves the Court to order his pretrial release on certain conditions.  As grounds for this motion, Mr. Qin states that given his personal history and characteristics, family and community ties, lack of any prior criminal record, and the nature and circumstances of the offense charged, the government cannot meet its burden of proving that there are no combination of conditions of release that will reasonably assure his appearance for all future court proceedings.  18 U.S.C. § 3142 (b).

The Indictment in this case charged defendant with: Conspiracy to Commit Export Violations in violation of 50 U.S.C. § 1705 (Count 1) and Visa Fraud in violation of 18 U.S.C. § 1546(a) Counts 2 and 3).  As argued below, defendant submits that his pretrial release on conditions including a secured bond, surrender of his and his family's passports, and electronic monitoring bracelet is sufficient to ensure his appearance at all court proceedings.

## I.    The Bail Reform Act

Under the Bail Reform Act, a defendant may only be detained pending trial if the government establishes either by clear and convincing evidence that the person poses "a danger to the safety of any other person or the community if released," or by a preponderance of the evidence that the person poses a serious risk of flight.  18 U.S.C. § 3142(f); *United States v.*

*Patriarca*, 948 F.2d 789, 791-793 (1st Cir. 1991).  If there is some risk, the Court should consider whether a combination of release conditions "will serve as a reasonable guard."  *Id*. at 791.

Here, the government is not contending that the pretrial release of defendant poses a danger to the safety of any other person or of the community.  Therefore, it is the government's burden to establish that defendant poses a serious risk of flight such that "no combination of conditions will reasonably assure [his] appearance at future court proceedings."  *United States v. Digiacomo*, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990) (citing *United States v. Vortis*, 785 F.2d 327-328-29 (D.C. Cir. 1986), cert. denied, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986)).

In determining whether suitable release conditions exist, the judicial officer must take into account the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; and (3) the history and characteristics of the accused, including the person's character, family and community ties, past conduct and other factors.  18 U.S.C. § 3142(g).

## II.   **Analysis of the Applicable Factors**

### A.  **The Nature and Circumstances of the Offense Charged**

The gravamen of the charge against defendant is that he exported 78 hydrophones to the Northwestern Polytechnical University ("NWPU"), in China, between July 2005 until December 2016, without an export license.  A marine biologist by training, defendant is in the business of exporting oceanographic instruments to China.  A hydrophone is one such instrument – typically 6 inches or less in size – which sits on the ocean floor and detects and records various noises.  It is principally used to record marine organisms and to assess acoustic impacts from human and

seismic activities.   See Exhibit A.  As with virtually every type of scientific instrument, a

hydrophone can have a military application.  Despite this potential, no export license is required

to export this *product* to China generally.  See Exhibit B[1]  The problem here, according to the

indictment, is that defendant exported the items to a particular *entity* – NWPU – that requires

export licenses to receive an export of *any* item found on the Commerce Control List.  The

indictment alleges that this designation exists because NPWU is a "Chinese military research

institute that . . . has been involved in the development of unmanned aerial vehicles, autonomous

underwater vehicles, and missile proliferation projects."  (Ind. ¶5).  "Military research

institution" is a misleading characterization.  In fact, NPWU is a full spectrum engineering

university.  Some departments of NPWU perform military research, as do many American

universities (MIT, for example).   The indictment does not allege that the hydrophones in this

case were intended for any particular military application, or that the defendant believed or

expected that they would be.  Moreover, there is no contention here that defendant has ever

exported or attempted to export any product which was in fact intended to be used in a military

application, despite an abortive undercover effort by the Department of Homeland to lure him

into a scheme to export products controlled under the United States Munitions List ("USML").

See Exhibit C (Affidavit of Special Agent Anderson, ¶¶22-26)

---

[1] As shown in Exhibit B, the product is classified as Export Control Classification No. 6A991.  The Commerce
Control List indicates that this product is controlled for "AT," i.e, Anti-Terrorism, and refers to the "Country Chart."
That chart indicates that products to China are not controlled for Anti-Terrorism.  AT controlled countries (Iran,
Syria, Sudan, and North Korea) are subject to countrywide trade embargoes without differentiating the
characteristics of the exported products.

*Products* are often controlled for National Security ("NS"), which designation applies to the export and re-export of
"items that would make a significant contribution to the military potential of any other country or combination of
countries that would prove detrimental to the national security of the United States."  Hydophones are not classified
as NS.

### B.  The Strength of the Government's Case

The government's case appears to be based entirely upon emails sent or received by the defendant or by other persons said to be his co-conspirators.  (Ind. ¶25a-y).  All of this information was extracted from defendant's computer when it was seized on November 24, 2017 when defendant returned to the United States after a trip to China.  (Anderson Affidavit, ¶¶28-30).  It was then forensically imaged and searched "[p]ursuant to HIS's border search authority." (Id. at ¶30).  It has never been returned.  No warrant was sought until February 2, 2018, on the basis of information retrieved from the previous search without warrant.  (Id. ¶31-44).

All of this evidence is likely to be suppressed.  In *Alasaad v. Nielsen*, 2018 WL 2170323 (D.Mass. 5/09/2018) (Exhibit D) Judge Casper – the judge to whom this case is assigned – considered the question of whether, in light of the decision in *Riley v. California*, 134 S.Ct. 2473 (2014), the Fourth Amendment requirement of a warrant based upon probable cause applies to a border search of a digital device.  *Riley* held these requirements apply to the search of a digital device seized as incident to an arrest.   In *Alassad*, a civil case, Judge Casper denied the government's motion to dismiss, holding that plaintiffs who had been subjected to border searches and seizures had sufficiently alleged violations of the Fourth amendment in that their devices had been searched without warrant or probable cause (* at 20) and/or subjected to "prolonged detention."  *Id.*  Judge Casper's decision represents the most current and extensive discussion of this issue in the federal courts and it pertains directly to this case.  At the very least, this defendant has every reason to believe that the information extracted from his computer will be suppressed and that he will prevail.  The government's case creates no motive to flee.

### C. Defendant's History and Characteristics

Defendant, age 41, was born and raised in China. He has no criminal record and has never been arrested before this case. He is married and has two children, ages 9 and 5. His family resides in the U.S. along with a number of extended relatives. His sister-in-law, brother-in-law and their two sons reside in Concord, Massachusetts and are U.S. citizens. Defendant's mother-in-law also resides with her daughter and son-in-law in Concord. Defendant's father-in-law and wife reside in New Hampshire and are also U.S. citizens. A chart listing the defendant's family members residing in the U.S. is attached as Exhibit E.

Defendant brought his family to the U.S. to provide the best educational opportunities for his children. Family is what is most important to defendant. Indeed, defendant and his wife had a second child knowing it would require a significant fine to be paid to the Chinese Government under the "One Child Policy." Defendant traveled to the United States in 2014 after applying for and obtaining an EB-5 Visa. He and his wife and children have since become Legal Permanent Residents of the United States.

Defendant's dedication to his wife and children is well recognized by his neighbors and other community members. As noted by several of defendant's neighbors and friends, he is an extraordinary father and husband. See Exhibit F (Letters of Support including a letter from defendant's wife, Zongyan Han). Indeed, when his daughter was having difficulty in a traditional swim class because she was drinking the chlorinated water, defendant constructed a pool in his backyard and gave her daily swim lessons. See letter from Ms. Rebecca L. Crane. He also invited neighborhood children over to try out an underwater robot in the pool. Several photographs of defendant with his wife and children are attached as Exhibit G.

Since coming to the U.S., defendant and his family developed strong roots in their local community.   Defendant and his family reside in Wellesley, Massachusetts.  As reflected in the letters of support, defendant has proven to be a caring community member.  For instance, he helped with the transportation of his neighbor's children to and from school for several weeks following the neighbor's surgery.  See letter from Ms. Rebecca L. Crane.

Defendant is also an active member in the Wellesley Chinese American Network and the Hardy Elementary School Community where his children attend school.  See letter from Ms. Shengli Li.  At the Wellesley Science, Technology, Engineering and Math "STEM" exposition, defendant created a hands-on demonstration involving a submarine robot at the Hardy School. *Id*.  The demonstration was a favorite among the students.  *Id*.  Several photographs demonstrating defendant's participation in the STEM exposition and his involvement at the Hardy School are attached hereto as Exhibit H.

The government contends that defendant should be detained because it claims he has sufficient resources here and in China to enable him to flee.  This is not an adequate basis to detain him.  Even if he had sufficient resources, that would not constitute a reason to detain him given all the other factors connecting him here and the defendant's proposed conditions of release.  Moreover, by no means are defendant's resources so extensive as to create any significant risk of flight.  See the attached chart listing defendant's U.S. resources as Exhibit I.[2] Defendant also has attached the FBAR report generated by the government as Exhibit J which shows a total of $277,782 in foreign accounts in 2017.

Given his family ties, his roots to his local community, and his dedication to providing for his wife and children, it is simply incomprehensible that defendant would fail to appear for

---

[2] In addition to the assets listed in the chart, defendant's children each have approximately $70,000 in a college savings plan.

court appearances or do anything to jeopardize the well-being of his family.  Simply put, defendant is not a flight risk.

## III.  Proposed Conditions of Release

In addition to the standard conditions of release, defendant proposes the following conditions:

(1) Execute a bond secured by the defendant's home located in Wellesley, Massachusetts. The home is unencumbered and was purchased for $717,250.00 on June 25, 2015.

(2) If deemed necessary by the Court, defendant's sister-in-law and defendant's wife's parents will put up their properties located in Nashua, New Hampshire.

(3) Surrender defendant's passport as well as the passports of his wife and children.

(4) Defendant will wear an electronic monitoring bracelet at all times.

## IV.  Conclusion

Defendant respectfully requests that the Court order his pretrial release on the conditions proposed above.

Respectfully Submitted,
Shuren Qin,

By his attorneys,

/s/ Max D. Stern
Max D. Stern, BBO # 479560
mdstern@toddweld.com
Melinda L. Thompson, BBO #651265
mthompson@toddweld.com
Michael R. DiStefano, BBO # 675615
mdistefano@toddweld.com
Todd & Weld LLP
One Federal Street
Boston, MA  02110
(617) 720-2626

8

Hanbin Wang
277 Broadway
Suite 1208
New York, NY 10007
hanbinwang@hbwlawoffice.com
(212) 577-2220

Dated: July 3, 2018

## CERTIFICATE OF SERVICE

I, Max D. Stern, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 3, 2018.

/s/ Max D. Stern
Max D. Stern