UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Crim. No. 18-10205-DJC |
| v. | ) | |
| | ) | Leave to file granted |
| SHUREN QIN, | ) | on August 16, 2018 |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S AMENDED MOTION TO DISQUALIFY HANBIN WANG
AS COUNSEL FOR THE DEFENDANT BASED UPON A CONFLICT OF INTEREST**

The United States moves this Court to disqualify attorney Hanbin Wang ("Wang") from continuing to represent the defendant Shuren Qin ("QIN") in this matter.  When undersigned counsel assented to Wang's *Pro Hac Vice* motion, it was unaware that Wang has been representing the Chinese government in connection with its effort to "repatriate" fugitives living in the United States and recover any illicit assets since at least May 2016.  QIN is currently charged with illegally exporting U.S. origin goods with anti-submarine warfare applications to a prohibited end-user, Northwestern Polytechnical University, an entity that works for the government of the People's Republic of China ("PRC") in advancing the People's Liberation Army ("PLA") Navy. Indeed, as Special Agent Jon Bentsen of DHS's Homeland Security Investigations testified at the detention hearing, QIN has communicated with multiple entities affiliated with the PLA,

1

including the PLA University of Science and Technology, which is a "key university that helps develop and modernize China military technology." *See* Jul. 3, 2018 Tr. at 14-15. QIN has received financial payments from entities affiliated with the PLA. *Id.* at 16. Further, QIN identified the "China Navy" as one of his customers on the website of LINKOCEAN TECHNOLOGIES, LTD. ("LINKOCEAN"). *Id.* at 17-18.

In addition, since QIN was indicted on June 26, 2018, the government has uncovered additional evidence on QIN's electronic devices that demonstrate: (1) QIN was tasked with procuring numerous items for the PLA from the United States, Canada, and Europe; (2) QIN obtained goods for the PRC with applications in underwater and marine-related technologies as directed by the PLA; and (3) QIN was paid hundreds of thousands of dollars by the PRC government.  Because QIN's procurement activities were directed by the PLA, occurred while QIN was living in the United States, and QIN never provided notification to the U.S. Attorney General that he was working as an agent of the PRC, his actions violated 18 U.S.C. § 951.[1]  Accordingly, Wang's representation of both the PRC government and QIN appears to pose an actual or potential conflict of interest.  Therefore, this Court should

---

[1]The government has advised QIN, through his non-conflicted counsel, that it intends to supersede and bring additional charges in the next 1-2 months.

disqualify Attorney Wang from continuing to represent QIN in this matter.[2]

I.   Statement of Facts

Wang is a Chinese born U.S. citizen who moved to the United States in 1996 to attend law school.[3]  He opened an office in New York in or about 2000.  Beginning in or about February 24, 2016, Wang began providing legal advice to the PRC through the Consulate General of People's Republic of China in New York. Wang has entered contracts with the Consulate General of the People's Republic of China in New York detailing the legal arrangement between himself and the PRC.  *See* Exhibits 1-3. These contracts were obtained from DOJ's National Security Division, Foreign Agents Registration Act ("FARA") Unit with whom Wang had filed copies of these contracts.[4]  According to these contracts, Wang has provided legal service to the PRC "in connection with Chinese government's effort to repatriate economic fugitives and recover related illicit assets in the United States."  *See, e.g.,* Ex. 3 at 1.  According to these

---

[2]Through this motion, the Government is only seeking to disqualify Attorney Wang.  The government has no concerns with QIN's other counsel, Attorneys William Kettlewell and Sara Silva.

[3]Wang became a naturalized U.S. citizen in January 2000.

[4]In addition to these contracts, Wang submitted correspondence to DOJ asserting that his legal services to the PRC did not create a registration requirement because he would not be involved in any political lobbying activities.

contracts, Wang's legal services to the PRC has specifically included:

- Providing legal advice on U.S. law as it relates to repatriating former Chinese government officials who are wanted on criminal corruption charges in China and who are physically inside United States;

- Providing legal advice about recovering illicit assets of Chinese citizens currently located in the United States who are wanted on criminal corruption charges in China;

- Providing legal advice on communications between Chinese and U.S. government officials regarding the repatriation of Chinese citizens located in the United States;

- Monitoring and reporting on public available information on the target of repatriation and any related cases in the federal or state courts or immigration proceedings; and

- Providing briefings to representatives of Chinese government agencies.

Over the last few years, the PRC's effort to repatriate its citizens -- the program that Wang has assisted -- has been scrutinized by the media.  Some commentators have even referred to the PRC's repatriation activities as a "global kidnapping campaign." *See* Zach Dorfman, *The Disappeared: China's global kidnapping campaign has gone on for years. It may now be reaching inside U.S. borders*, Foreign Policy, Mar. 29, 2018, available at https://foreignpolicy.com/2018/03/29/the-disappeared-china-renditions-kidnapping/.  Similarly, The Wall

Street Journal reported in 2017 that:

> Since 2014, China has escalated its global efforts to
> capture Chinese fugitives accused of corruption,
> including those who fled to the U.S.  The initiative,
> dubbed 'Operation Fox Hunt,' often involves pressuring
> relatives in China, confiscating the target's assets
> and sending agents to deliver personal threats.

*See* Kate O'Keeffe et al., *China's Pursuit of Fugitive Businessman Guo Wengui Kicks Off Manhattan Caper Worthy of Spy Thriller*, WSJ, Oct. 22, 2017, *available at* https://www.wsj.com/articles/chinas-hunt-for-guo-wengui-a-fugitive-businessmen-kicks-off-manhattan-caper-worthy-of-spy-thriller-1508717977.

On June 26, 2018, QIN was charged with conspiring to illegally export U.S. origin goods to the PRC, in violation of 50 U.S.C. § 1705.  To date, the investigators have found evidence that since 2012, QIN has engaged in numerous violations of U.S. export laws and engaged in visa fraud.  The investigators and analysts are continuing to review and translate the electronic data obtained from the search warrants executed in this case.

Most recently, the investigators have uncovered documents that demonstrate that QIN was directed by the PLA to procure parts from the United States, Canada, and Europe for underwater and marine related applications.  QIN provided these services to

the PLA (and related entities) and the PRC government paid QIN
hundreds of thousands of dollars.  Although QIN was living in
the United States when he performed these services and acted as
an agent of the PRC, he never notified the U.S. Attorney
General.  18 U.S.C. § 951 makes it illegal to act in the United
States as an agent of a foreign government without prior
notification to the Attorney General.

On July 2, 2018, Wang moved for leave to appear *Pro Hac
Vice* on behalf of the defendant. This Court granted this motion.
Wang then appeared and participated at the detention hearing
held on July 3, 2018.  After the detention hearing, Wang
traveled to China on July 7, 2018 and remained there until July
22, 2018.  The government is not privy to any information
regarding the purpose of Wang's trip to China.  The timing
though appears to suggest that Wang may have conducted work in
China related to his representation of QIN and his pre-existing
relationship to the PRC government.  While in China, Wang may
have received instructions from his other client – the Chinese
government – or been debriefed by PLA representatives about
QIN's criminal case.  At a minimum, Wang's attorney-client
relationship with the PRC government, his work for the PRC
government related to repatriation activities and assistance in
efforts to coerce fugitives to return to the PRC, and his

representation of QIN appear to at least create a potential conflict of interest, if not, an actual one.

II.  Legal Argument

The Sixth Amendment's right to assistance of counsel "does not confer an absolute right to a particular counsel." *United States v. Diaz-Martinez*, 71 F.3d 946, 949 (1st Cir. 1995)(quoting *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir. 1977)); see *Wheat v. United States*, 486 U.S. 153, 158-59 (1988) ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.").  The First Circuit has made clear that an accused's right to choose his own counsel cannot be used to manipulate "the orderly procedure in the courts or to interfere with the fair administration of justice." *United States v. Cortellesso*, 663 F.2d 361, 363 (1st Cir. 1981) (quoting *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir. 1963); *see also Poulack*, 556 F.2d at 86 (concluding "the right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure.").  Although disqualification of counsel is generally a measure of last resort, courts can disqualify a defendant's attorney even "over that defendant's objection where it finds

7

either an actual conflict [of interest] or a serious potential conflict." *United States v. Lanoue*, 137 F.3d 656, 663 (1998) (citing *In re Grand Jury Proceedings*, 859 F.2d 1021, 1023-24 (1st Cir. 1988). Here, Wang's representation of QIN creates an actual conflict of interest or, at a minimum, a serious potential conflict of interest.

Wang's duty of loyalty to his pre-existing client, the PRC government, which he has represented for several years, conflicts with his duty to zealously represent QIN. QIN is entitled to conflict free representation. Because of Wang's representation of the PRC government, he may discourage QIN from pursuing any defense that tends to portray the Chinese government or military in a negative light or reveals any information about how the Chinese military operates or procures goods from abroad.

Wang's pre-existing relationship with the PRC government also creates a serious potential conflict of interest. Wang was born in China and has acknowledged in his signed contracts with the PRC government that he considers it "a privilege" to serve his country of birth as its legal advisor regarding its repatriation activities. Wang has been on the PRC government's

payroll since at least 2016.[5]  Accordingly, Wang also has a

financial incentive to follow the PRC's government instructions

with regards to QIN.  Wang's representation of the PRC may

therefore significantly affect the advice he gives to QIN.  For

instance, Wang might advise QIN against cooperating with the

U.S. government because QIN would likely be asked to reveal

information about, or explain, the PLA's procurement activities.

This information could be detrimental to the PRC government,

Wang's other client.  Thus, Wang's representation of QIN would

be adversely affected by Wang's duties to the PRC government.

    Although a defendant can ordinarily waive a potential

conflict of interest, the Court should refuse to accept such a

waiver here. Courts have "substantial latitude" in refusing

waivers.  *See In re Grand Jury Proceedings*, 859 F.2d at 1023-24.

Wang's continued representation of QIN would "disproportionately

disadvantage the government [and] interfere with the ethical and

orderly administration of justice." *See Cortellesso*, 663 F.2d

at 363.

---

[5]The government currently has no information as to how Wang
became involved in this matter.  It also does not know whether the PRC
government is paying for Wang's representation of QIN in this matter.
Because Wang has never practiced in Massachusetts and has worked for
the Chinese Consulate since 2016, it is likely that the PRC government
is paying for Wang to represent QIN.  If the PRC government is indeed
paying Wang to represent QIN, the likelihood of an actual conflict of
interest would be greatly increased.

CONCLUSION

WHEREFORE, the government respectfully requests that the Court disqualify Hangbin Wang from continuing to represent QIN in this matter because of an actual and serious potential conflict of interest arising from his representation of the PRC government.

Certification of Local Rule 7.1(a)(2) Compliance

Pursuant to L.R. 7.1(a)(2), the government unsuccessfully attempted to confer in good faith with the defense prior to filing this motion.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: /s/ *B. Stephanie Siegmann*
B. STEPHANIE SIEGMANN
Assistant U.S. Attorney

CERTIFICATE OF SERVICE
I hereby certify that this document was filed on August 16, 2018, through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

/s/ *B. Stephanie Siegmann*
B. Stephanie Siegmann

Date: August 16, 2018